## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **Jennifer A. Dunkley,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:18-CV-2189-NJR-RJD |
| | ) | |
| **Local 2600 AFSCME and** | | |
| **Illinois Department of Human Services** | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

### AND

### JURY DEMAND

## INTRODUCTION

1. Plaintiff, Jennifer Dunkley filed this action against her labor union, AFSCME Local 2600 and against her employer, Illinois Department of Human Services alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981. Plaintiff alleges that the Defendants racially discriminated against her by tolerating a hostile work environment in which she suffered harassment, disparate treatment and intentional discrimination and retaliation. Plaintiff also alleges that the Defendants failed to represent her based on racial discrimination.

2. On September 1, 2015 plaintiff started employment with Illinois Department of Human Services. Her job location was at Montgomery County FCRC. John Foreman, was the Region IV Administrator and Janet Schwartz, HSCM was the Local Office Administrator.

3.  Plaintiff was the only black employee at Montgomery County FCRC.  Plaintiff was confident in her abilities to do a good job as the Public Aid Eligibility Assistant (PAEA). After a week of orientation plaintiff started to register applications independently.

4.  It was during this time that problems started to surface, where some co- workers would complain that plaintiff was making errors, as plaintiff followed up on each complaint it came to light most of the errors were not hers. As time went on other mishaps would occur, for example applications would go missing, or applications which plaintiff had registered would be disposed accidentally by caseworkers instead of being processed.

5.  The office environment became more hostile towards plaintiff. Janet Schwarz, LOA started to tell plaintiff that she was slow in her work. She said plaintiff was taking too long to register the applications. In response to this accusation plaintiff contacted the Regional Manager, John Foreman and requested a comparison of the number of applications she was processing to other workers in my position in other offices. John Foreman said this information was not available to plaintiff and referred her back to Janet Schwarz, LOA.

6.  Janet Schwarz became more aggressive and loud with plaintiff each time when plaintiff would ask her any questions in regard to her work. Another requirement she gave plaintiff was to give every piece of work that plaintiff did each day directly to her. No one else had that requirement. When plaintiff gave that work to her at the end of the day, it was never returned to her, this meant that if something went missing plaintiff would have nothing to prove that she did her work..

7.  Plaintiff has observed Janet Schwarz correcting other staff about errors in their work in a respectful way without yelling. However, plaintiff has been threatened and yelled at and treated with animosity by Janet Schwarz, LOA.

8.  Plaintiff sent a complaint to the Illinois Department of Human Services, Human Resources office about Janet Schwarz, LOA aggressive behavior. In response to the email about her concerns to Human

Resources, plaintiff received a counseling from John Foreman, which was recorded in her file, for not following his instructions to send her grievance to the union and not to Human Resources.

9.  In April 2016 Plaintiff filed a charge with the EEOC # 560-2016-01239, however, after hearing that Janet Schwarz, LOA would be retiring soon, she withdrew the charge in hopes that the situation would improve after Janet Schwarz, LOA retired. In December 2016 Janet Schwartz, LOA retired.

10. From January 2017 to March 2017 the Montgomery County FCRC had an interim LOA, Janelle Clements. During this time plaintiff had the opportunity to discuss further training in doing the payroll, inventory, supply orders and issuing Link cards. For a brief time plaintiff was feeling very positive about her progress in her position as a Public Aid Eligibility Assistant.

11. However, in April 2017 Patricia Herker, became the new Local Office Administrator. Within the next thirty days plaintiff's office was taken away by Patricia Herker, LOA and she was given a desk in an open area of the office that was very noisy. Plaintiff was also assigned additional tasks and scheduled for an interim evaluation by Patricia Herker, LOA. All the other employees, including the plaintiff had previously had an annual evaluation in December 2016. Plaintiff was the only employee who was targeted by Patricia Herker, LOA, for an interim evaluation and plaintiff received a negative evaluation.

12. May 10", 2017 Patty Herker called Plaintiff in for an evaluation, plaintiff requested to have the union steward, Lisa Eden present at the evaluation. When Lisa Eden arrived she said that Patricia Herker, LOA was allowing her to be there but this is not the usual case. After receiving the negative evaluation, plaintiff gave her response to Patricia Herker, LOA and to Lisa Eden, Union Steward. Lisa and plaintiff then went to talk about the situation in an office, plaintiff tried to explain to the union steward that these accusations were not true, but Lisa Eden, Union Steward said plaintiff need to admit her mistakes. Lisa Eden, Union Steward told plaintiff that that she does not like people who don't admit their mistakes. She also said that plaintiff needed to give her a time that the mail will be done each day for her to tell Patricia Herker, LOA .Plaintiff told her this was difficult to set because the mailman comes with the mail at different times each day and the amounts of mail vary each day. Lisa Eden, Union Steward, said that plaintiff had no choice, she had to set a time for her to tell Patricia Herker, LOA. Plaintiff told Lisa Eden,

Union Steward 4:30 PM and she went and told Patricia Herker, LOA.

13. May 15", 2017,  Patty Herker, LOA sent an email to plaintiff to come to her office for a meeting. On the way to Patty Herker, LOA office plaintiff saw Lisa Eden, Union Steward in the break room. Lisa Eden, LOA told plaintiff that Patty Herker, LOA  asked her to come to the meeting also, she asked plaintiff if she knew what it was about and plaintiff told her no, she did not say anything else. At this meeting Patty Herker explained that plaintiff was being counseled it was not disciplinary but it would be in her local file for a year.  Patty Herker, LOA read the incident regarding a late link card that she had typed. Plaintiff tried to explain the situation with the card to her but that was to no avail. It was then that Lisa Eden, Union Steward suggested that this document should be signed by Patty Herker and that plaintiff should also sign. Lisa Eden and plaintiff then went to talk about the meeting. Lisa Eden, Union Steward explained to plaintiff what counselling was and that the next step in the process would be monthly evaluations.

14. Lisa Eden, Union Steward also told plaintiff that the AFSCME LOCAL 2600 had reviewed my case and they were not going to take any action on my behalf. Lisa Eden, Union Steward said her role now would be to make sure that Patricia Herker, LOA follows the proper procedure in this process. Lisa Eden, Union Steward told plaintiff that this job is not for everyone and this was not the right job for the plaintiff. Lisa Eden, Union Steward also told plaintiff that she should start looking for other jobs

15. The following months, plaintiff Jennifer Dunkley was harassed by Patricia Herker, LOA. The following actions were unlawfully taken against the plaintiff by Patricia Herker, LOA. On 5/10/17 unfavorable evaluation, on 5/15/17 counseling, on 6/26/17 pre-disciplinary meeting, on 7/3/17 five day suspension, on 7/11/17 pre-disciplinary meeting, on 7/13/17 oral reprimand for unexcused absence, on 8/7/17 seven day suspension, on 8/17/17 pre- disciplinary Meeting, on 9/8/17 Pre-disciplinary meeting and on 9/14/17 unexcused absence charge.

16. Plaintiff alleges that the Defendants racially discriminated against her by condoning a hostile work environment in which she suffered harassment, disparate treatment and intentional discrimination. Plaintiff also alleges that the Defendants failed to represent her based on race discrimination.

17. The Plaintiff, Jennifer Dunkley is a member of a protected class, and was the only person of color, who is black, working in the IDHS Montgomery County FCRC office during the time of the allege racial discrimination.

18. The Plaintiff, Jennifer Dunkley is a certified employee of Illinois Department of Human services in the position of Public Aid Eligibility Assistant.

19. The Plaintiff, Jennifer Dunkley was subjected to multiple disciplinary actions including two suspensions.

20. The Plaintiff, Jennifer Dunkley under duress requested and was granted a transfer to another DHS Office, and the Plaintiff's position of Public Aid Eligibility Assistant in the Montgomery County

21. The plaintiff, Jennifer Dunkley seeks declaratory and injunctive relief; compensatory damages; and attorneys' fees, costs, and expenses to eliminate defendant's policy of racial harassment and to make victims whole.

## JURISDICTION AND VENUE

22. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§451, 1331, 1337,

1343 and 1345. This action is authorized and instituted pursuant to Section 706 (f)(1) and (3) of Title VII of the Civil Rights Act of 1964, *as amended,* 42 U.S.C. §2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, *as amended,* 42 U.S.C. §1981.

23. Venue is proper in this court because the unlawful employment practices alleged below were and are now being committed within the jurisdiction of the United States District Court for the Southern District of Illinois.

24. Plaintiff filed a complaint # 560-2017-01397 with the "EEOC" alleging violations of Title VII of the Civil Rights Act of 1964 against her employer Illinois Department of Human Services.

25. Plaintiff filed a complaint  # 560 -2018-00682 with the "EEOC" alleging violations of Title VII of the Civil Rights Act of 1964 against her employer Illinois Department of Human Services.

26. Plaintiff filed a complaint # 560-2018-00104 with the "EEOC" # alleging violations of Title VII of the Civil Rights Act of 1964 against her union Local 2600 AFSCME.

## PARTIES

### A. PLAINTIFF

27. Jennifer Dunkley

### B. DEFENDANT

28. Local 2600 AFSCME

29. Illinois Department of Human Services

## STATEMENT OF FACTS

### A. DEFENDANT'S INEFFECTIVE ANTI-DISCRIMINATION EFFORTS

30. Plaintiff , Jennifer Dunkley is informed and believes, and thereupon alleges that Defendants maintain a pattern or practice of ignoring and/or failing to act promptly to investigate discrimination and harassment complaints; conduct inadequate investigations; maintain inadequate anti-harassment policies and practices; fail to adequately train leads, supervisors and managers about their policies and procedures, and about how to prevent harassment from occurring; fail to implement an adequate complaint mechanism for receiving and addressing complaints of harassment; and refuse to discipline identified harassers, allowing employees against whom harassment complaints have been made to continue working in supervisory positions within the Illinois Department of Human Services, earning money, unaffected by the complaint.

### B. BREACH OF CONTRACT

31. Plaintiff claims failure to represent a member as stated in the Council 31 AFSCME Contract Agreement, July 1, 2012 – June 30, 2015. Non-Discrimination, Article 111; Section1. Prohibition of Discrimination.

Both the employer and the Union agree not to discriminate against an employee on the basis of race, sex, sexual orientation, creed, religion, color, marital or parental status, age national origin, political affiliation and /or beliefs, nor shall the parties discriminate against any employee with a disability, or for other non-merit factors. Defendants failed to implement the discrimination policy.

32.    Grievance Procedure, Article V: Discipline, Article IX. Records and forms, Article XVII. Due to racial discrimination. Defendants were not timely in filing grievances.

33. These factual allegations will be suffice to prove that  Illinois Department of Human Services and Local 2600 AFSCME have violated the Title VII and Section 1981 rights of the plaintiff and have breached their contract..

**C. EVALUATION**

34. In December 2016 all the employees at Montgomery County FCRC office received their annual evaluation by the Local Office Administrator, Janet Schwartz who was retiring the next year. Plaintiff had already received her annual evaluation at the same time as all the workers who were employed in the Montgomery County FCRC office, including Patricia Herker, before she was got promoted to Local Office Administrator worked as a Human Services Caseworker at the Montgomery County Office.

35. The comments on plaintiff's first evaluation states that plaintiff was very thoughtful and respectful to everyone. It also said that plaintiff did a great job in registering all applications and screening expedited services. This evaluation also mentioned that plaintiff should work to improve by helping the receptionist with overflow phone calls and walk in customers. Janet Schwartz, LOA stated that she believe that the plaintiff will be a great asset to the Montgomery County office.

36. The comments on plaintiff's end of year annual evaluation were similar to her first evaluation commending her for being thoughtful and respectful and mentioning other areas of responsibilities that the plaintiff will begin to assume.

37. Patricia Herker became the Local Office Administrator on April 1st, 2017. One month after she became the LOA in Montgomery County FCRC, she targeted the plaintiff for an interim evaluation. None of the white employees were evaluated by Patricia Herker, LOA at this time. Plaintiff's interim evaluation in May 2017

which was done by Patricia Herker, Local Office Administrator was very negative. Plaintiff previous two

evaluations, one which was less than six months ago were good evaluations. The allegations in the interim

evaluation were unfair and false. In particular when these same task were being done by other workers

allowances were made for them, and extra help was given, the opposite has happened to the plaintiff,

everything was done to make the task more difficult for the plaintiff. The statement about anonymous

complaints by customers saying that plaintiff was rude to them on the phone is false. When our customers

complain they don't usually do not do so anonymously.

### D. SETTING UP FOR FAILURE 1

38. In early 2016 the Montgomery County Office had an Office Assistant who worked at the front desk. She did

    not do the mail. Another caseworker sat at the customer service desk in order to help walk in customers.

    Plaintiff worked from her office, registering new applications, answering phones, and scanning. The

    plaintiff covered the office assistant breaks and lunch at the front desk.

39. In November 2016 the Office Assistant leaves the job. A caseworker still sits at the customer service desk,

    this caseworker also registers the walk in snap REDE apps. The plaintiff is now working at the front desk,

    but she still uses her office to catch up with PAEA work during her breaks and lunch time. Plaintiff, Jennifer

    Dunkley has now assumed the job task for both positions, the office Assistant and the PAEA.

40. In April 2017 Patricia Herker, was promoted to the position of LOA for the Montgomery Office. Patricia

    Herker, LOA moved plaintiff out of her office to sit at the desk that the customer service case worker

    usually sits. The previous complaints of caseworkers who worked at that desk was that they could not get

    any other work done sitting at that desk because of the importance of answering the phones and helping

    walk in customers.

41. While sitting at the customer service  desk, plaintiff answers the phones, helps walk-in customers, register

    new applications, register REDE's that come in the mail, register walk-in REDE applications, transfer cases,

    process link cards, and open and process the mail. It was also plaintiff's responsibility to keep up with the

    scanning folder, uploading, scanning, and moving files.

42. When plaintiff have been on training she has observed other PAEA's in different offices who are they are not required to work under these adverse conditions. The PAEA's in other FCRC offices usually have an office and they work away from the front desk where they can concentrate on registering applications correctly and completing other assigned tasks.

**E. SETTING UP FOR FAILURE 2**

43. 6/19/2017 Patricia Herker, LOA called a pre discipline meeting with plaintiff. The charge was insubordination, failure to do job and poor job performance, failure to respond to emails timely, responding to emails with insubordinate responses, not following agreements of mail being distributed by 4:30 pm.

44. Plaintiff submitted a written rebuttal to the union steward Lisa Eden and Patricia Herker, LOA.

45. Plaintiff would inform Patricia herker, LOA of the progress of her work during the day, However when plaintiff asked for help, plaintiff was chastised instead of receiving support.

46. On June 12th plaintiff advised Patricia herker, LOA that there was a lot of mail and plaintiff was having difficulty completing the task because the new Office Associate was at training. Patricia herker, LOA response was that plaintiff needed to sort it out and get it done by 4:30 pm.

47. One of the challenges of doing the mail are the verifications, such as paystubs which cannot be matched to any paperwork in the office. So, this leaves the problem of where should the verifications which are unfound go so that they are accessible. Plaintiff usually scan items into the scanning folder, but a case could be denied if a caseworker does not check that folder for verifications before denying.

48. At one point, before plaintiff started to do the mail task there was a folder in the cabinet titled "Unfound verifications". The practice was that verifications that came in by mail or fax and could not be matched with cases were placed in this folder. The caseworkers knew that if they were waiting for verifications, this was a place to look. This practice had been happening before plaintiff started in 2015.

49. When Patricia Herker became LOA she told plaintiff not to put any verifications in this folder, plaintiff asked her what should be done with the unmatched verifications. Patricia Herker, LOA response was "find them". Patricia Herker became LOA then removed the folder from the cabinet, hence creating this situation of not having a place to put verifications that were unmatched.

50. Plaintiff have been written up and reprimanded for having unmatched items at the end of the day, when other staff who were also in the same situation have not been reprimanded. Many ties verifications cannot be matched to applications because customers fax in their verification and mail in their applications. So the verifications are there before there is a registered application. Patricia Herker, LOA was aware of these scenarios.

51. On one occasion when the Office Associate did the mail she placed the unmatched mail on the central table where the caseworkers pass by and they looked through the items and picked out the verification they needed for applications that were on their desk. The next day when plaintiff did the mail and placed the unmatched items on the same table plaintiff was written up by Patricia Herker, LOA for carelessly leaving the mail on the table. However, the Office Associate was not reprimanded.

**F.  LUNCH AND BREAKS**

52. Plaintiff have endeavored to follow the policies and instructions given by Patricia Herker, LOA. However there are extenuating circumstances that call for flexibility in the work environment. One of these circumstance involve leaving for break in a timely manner. Plaintiff's Public Aid Eligibility Assistant position involves answering the phone and serving customers in the front lobby. Plaintiff have always tried to be sensitive to the needs of the customer. In a situation where the Office Assistant returns from her break and plaintiff is on the telephone with a customer plaintiff will need to finish the conversation in order to make sure that plaintiff is practicing  good customer service. Another situation may be that a customer had been waiting at plaintiff's window while plaintiff was on a call, instead of telling them to go to the other window it may be more polite to serve them and then go on her break.

53.  Another circumstance that prevents plaintiff from leaving for my lunch break at exactly 1:00 is that when the lunch hour is busy and there are a lot of people in the lobby plaintiff need to let the Office Associate know who is in the lobby and why they are there and whose queue they have been put.

54. Sometimes when plaintiff is on the phone and the Office Associate comes back from lunch she may answer a call on the phone, so plaintiff would need to wait for her to finish her call so that plaintiff can tell her

about the customers in the lobby. Plaintiff have found that this is a good way to prevent confusion and unnecessary long waits for our customers.

55. Plaintiff have explained to Patricia Herker, LOA the reasons why on some days leaving at the exact times are more difficult but she has refused to give me any flexibility.

56. Plaintiff has been treated differently by Patricia Herker, LOA in regards to the break schedule because other employees have flexibility when taking their breaks and they are not written up or disciplined in regard to their breaks even though they may leave late, take extra time or just have their breaks in their office.

57. There are no repercussions for other white employees

58. Plaintiff have not been insubordinate towards Patricia Herker, LOA.

59. My assigned break 10:15 am and 3: 15 pm and lunch break is 1: 00 pm, during breaks plaintiff is usually the only one left manning the office, at lunch time there is usually one case worker who is at their desk.

60. The practice in this office has been that employees make effort to go to their breaks and lunch on time, however there were many times when employees would leave late for breaks or lunch. The practice was that they would tell plaintiff or the Office Associate that they were leaving late and what time they would be back. The reason they would tell us is that we are the ones queueing the customers to caseworkers.

61. Patricia Herker, LOA started to target the time that I would leave for breaks and lunch, saying that I had to leave exactly on time. This rule is only for me because no one else was asked to do that.

62. On one occasion plaintiff would leave about 10 minutes late for her break other employees who took first break would still be on their break sitting in the break room of just coming back from their walk. This means that either they left late for their breaks or they took extra time.

63. On June 20, 2017 plaintiff went for her morning break at 10:25 and was sitting outside on the bench. At about 10:30 am another employee PA (caseworker) was leaving late for her break to go to the store. The rules that Patricia Herker, LOA has regarding leaving for breaks on time are only applied to the plaintiff.

64. On May 31. 2017 it was a busy lunch time and Plaintiff was trying to handover and clear some verifications from her desk that had come in. Plaintiff also had some messages for BM (caseworker), who had not come back from lunch until 1: 30 because she left late. Plaintiff gave BM (caseworker) the messages and went for

lunch. Patricia Herker, LOA only reprimanded plaintiff for leaving late and made no mention that the other caseworker was late returning from lunch.

65. Most of the time even if plaintiff leaves late for 1:00 pm lunch break plaintiff still would return by 2 pm.

**G. DISCIPLINE 1**

66. 7/11/2017 Patricia Herker, LOA called a pre discipline meeting with plaintiff. The charge was insubordination, failure to do job and poor job performance.

67. Plaintiff submitted a written rebuttal to the union steward Lisa Eden and Patricia Herker, LOA.

68. Plaintiff informed Patricia Herker, LOA that she did not register the new application that was faxed to the Montgomery County office because the customer had a pending application in another county. Plaintiff had previously been instructed not to register duplicate applications.

69. Plaintiff had a request from caseworkers to issue link cards for cases which are cancelled and also not activated in the system. In these situations plaintiff refer the case back to the caseworker. In cases where the item batched, the caseworker works on the case and then returns the request to the plaintiff for issuance. Plaintiff cannot control the timeline in which the caseworker returns the request for the

70. Plaintiff have observed that in other situations when a customer calls and an expedited link card is out of compliance, depending on which worker is responsible for the error, the situation is handled differently. For example AC called to say she was promised that her link card would be ready in two days but it was not. Patricia Herker, LOA was notified, after inquiry it was found that BM (caseworker) had worked on the case, when she heard which case worker worked on the case Patricia Herker, LOA said the case was not and expedite because the customer had missed one of our phone calls, so they had forfeited their right for expedite. Hence, there was no error because the case was not an expedited case.

**H. SUSPENSION 1**

71. 7/13/2017 Patricia Herker, LOA called an Oral Reprimand meeting with plaintiff for unauthorized absence on 7/10/2017.

72. Plaintiff submitted a written rebuttal to the union steward Lisa Eden and Patricia Herker, LOA.

73. On Friday, June 30th plaintiff received a notice of a 5 day suspension from Patricia Herker (LOA). It stated that I was being suspended from 7/3/2017 to 7/10/2017 and that I should return to work on 7/11/017 at 8:30 am.

74. When plaintiff returned to work on 7/11/2017 there was an email that was sent to her 7/5/2017, it was a corrected suspension notice stating that plaintiff should return to work on 7/7/017 at 8:30 am.

75. When plaintiff made inquiries she was told by Patricia Herker LOA that a mistake was made with the original paperwork and she had tried to contact me by calling my phone and leaving a message, also that a letter was sent to notify me of the changes. Plaintiff did not receive a phone message or a letter regarding this change in her return to work date.

76. Plaintiff, Jennifer Dunkley was given a 5 day suspension without pay by Patricia Herker, LOA from 7/3/2017 to 7/10/2017. The Patricia Herker, LOA made an error in her calculation of the numbers of days plaintiff should take off, Patricia Herker, LOA accused plaintiff, Jennifer Dunkley of an unexcused absence.

**DISCIPLINE 2**

77. 8.17.2017 Patricia Herker, LOA called a pre discipline meeting with plaintiff. The charge was Noncompliance with timely application registration and expedited screening.

78. Plaintiff submitted a written rebuttal to the union steward Lisa Eden and Patricia Herker, LOA.

79. In regards to expedited screening of applications plaintiff prefer to err on the side of caution. Patricia Herker, LOA has said that plaintiff was wasting the caseworkers time by tagging an application as possible expedite Patricia Herker, LOA said that if I put possible expedite on an application and the application turns out not to be expedited I would have wasted the caseworkers time. I have explained to her that based on the information written on the application it may seem to be an expedited case but when the caseworker does the interview they will know if it is truly an expedite case because customers give more information during the interview.

80. In regards to registering of applications, I have been registering applications in a timely manner. There have been situations where Patricia Herker, LOA has claimed plaintiff did not register an application in a timely manner, however, these claims were shown to be falsification by Patricia Herker, LOA

81. On July 27th Patricia Herker documented falsely in an email that plaintiff had left an application dated 7/24 in the IES inbox.

82. On the IES system the applications are in the inbox, anyone who has access to log in to IES can register an application if they know how to do it, however if someone starts the process of registering an IES application and fails to complete it, that application no longer shows in the IES inbox but it will show on that individuals log in as an application in progress. On 7/26 and 7/27 this application was only in Patricia's Herker's IES inbox, it was not showing in mine.

83. The application came in on 7/24 and it was not registered until 7/27. Patricia Herker, LOA started this application on 7/25 or 7/26 but she did not complete it until 7/27.

84. On July 22nd Patricia Herker, LOA documented falsely in an email that plaintiff had put the mail away incorrectly. Plaintiff explained to her that she was not the one who did the mail on July 21. However, in the copies of paperwork which are given to plaintiff at the Pre-Disciplinary meeting, Patricia Herker, LOA did not include the email in which plaintiff explained the situation.

85. Plaintiff was suffered an adverse action, however, the white employee was not reprimanded.

## I. POSTAGE METER

86. 9.8.2017 Patricia Herker, LOA called a pre discipline meeting with plaintiff for failure to follow directives from the LOA and insubordination.

87. Plaintiff submitted a written rebuttal to the union steward Lisa Eden and Patricia Herker, LOA.

88. The postage meter report is done once at the end of each month. Usually the refill and summary information is printed from the postage machine. The postage report form is either filled out by the Public Aid eligibility Assistant or the Office Assistant. The postage report then goes to Patricia Herker, LOA for her signature. It is then returned to the PAEA or OA to be emailed to Veronica Newton at head Office with cc to Patricia

Herker, LOA. The task of completing the postage report is primarily the job of the Office Assistant who sits at the front desk.

89. When our former Office Assistant left in November 2016 plaintiff assumed the responsibility of the doing the postage report because the position was not filled immediately.  In March 2016 an Office Assistant was hired and plaintiff trained her for the receptionist tasks, this included the task of doing the postage meter report. Since then plaintiff have continued to help with this task whenever she can and with any other Office Assistant task seeing that plaintiff's job role is to back up the Office Assistant.

90. Plaintiff and office assistant usually remind each other about the postage meter report each month and take turns filling it out and then giving it to Patricia Herker, LOA to be signed

91. There was a human error with the July postage report in that neither plaintiff, the office assistant, nor the LOA seem to have remembered about doing the July postage report. The missing July postage report was brought to our attention when the Office Assistant received an email in on August 31st from Veronica Newton saying that she did not receive our July postage report. We are not sure if it was done and given to the LOA and she forgot to sign it and return it to us, or if all three of us forgot that it was due at the end of July.

92. When the office assistant received the email from region about the missing July postage report she went ahead and did the August report. Since the LOA was out of the office away on training the office Assistant emailed the report to Veronica Newton without the LOA signature.

93. On 9/1/2017 Patricia Herker, LOA sent an email to plaintiff demanding to know why she did not do the July postage report on time. Patricia Herker, LOA went on to state that this task was assigned to me and the Office Assistant was the back up. It is evident that this task was not assigned to the plaintiff because Veronica Newton from Head Office sent an email to her usual contact, the office Assistant to inquire about the missing report.

94. Plaintiff was suffered an adverse action, however, the white employee was not reprimanded.

## J.  SUSPENSION 2

95. On August 7th Plaintiff receive a seven-day suspension from Patricia Herker, LOA for which she had not been given prior notice. plaintiff had taken time of on Friday, August 4th, 2017. When she returned to work on Monday, August 7th she signed in and went to her desk. It was at this point that she got a message from Patricia Herker, LOA to come to her office. Patricia Herker, LOA had also called in Phyllis Atchinson, another employee, to be present in her office as a witness to the suspension being served. Patricia Herker, LOA told plaintiff that I was suspended for 7 days starting on Monday, August 7th, 2017.

96. Patricia Herker, LOA gave plaintiff the paperwork to sign and said plaintiff should turn my keys in and go home. Patricia Herker, LOA said she had not given plaintiff, Jennifer Dunkley prior notice about the suspension was because plaintiff was off on Friday 4th. However, there is a contact phone number for plaintiff in plaintiff's office file, which is accessible to Patrica Herker, LOA. Plaintiff was not sent an email about this suspension, she was not given a telephone call; there were no messages on her answering machine from her employer or the Union about this suspension.

97. Plaintiff had arrived at work on Monday morning, August 7th, and then she had to gather her things and go home. Other staff was asking her why she was leaving; needless to say it was a very embarrassing situation. Plaintiff, Jennifer Dunkley believe Patricia Herker, LOA did this intentionally in order to shame her.

98. When Plaintiff returned to work on Monday, August 14th, 2017 she sent the suspension notice in an email to Lisa Eden, union steward. Plaintiff also requested for her to file a grievance about this suspension. She

99. Plaintiff, Jennifer Dunkley was given a 7 day suspension without pay by Patricia Herker, LOA 8/7/17 to 8/14/2017 seven day suspension.

## K.  TANF APPLICATIONS

100.    Defendant claims plaintiff failed to register five applications.

101.    Our Local Office is task based, this means that job tasks are rotated about every six weeks. On 9/1/2017 all the job tasks in the office were rotated including the TANF (Work and Training) jobs task. The task to processing TANF applications was rotated to another caseworker, P.A.

102.    On 9/8 during the pre-disciplinary meeting, Patricia Herker, LOA gave plaintiff the case numbers to four

of the cases of which she was accusing plaintiff of failing to register. Plaintiff told Patricia Herker, LOA that

she would need some time to look at the cases before commenting on them. After the meeting plaintiff ran

the case numbers in the computer system. One of them was on a day that plaintiff was out of the office and

on another one the customer was logged in by the Office Assistant. Plaintiff did not recognize the other two

names so she went to P.A to see if she could look at the paper applications that matched the case numbers.

103.    Plaintiff could not figure how she could have missed these applications so plaintiff asked P.A. where she

found those unregistered applications. P.A. stated that when the job task were being rotated on September

1st, 2017, the caseworker who was previously working on TANF (Work and Training) gave her all the work

that was in a pile on her desk in her office. P.A said she found these unregistered TANF applications in that

pile of left over work from the other caseworker. P.A. stated that she then went ahead and registered the five

TANF applications.

104.    Plaintiff did not register those 5 TANF applications because she never received them. They were in the

possession of the TANF case worker and she failed to register them in a timely manner.

105.    Plaintiff was suffered an adverse action, however, the white employee was not reprimanded.

**L. FAILURE TO PROMOTE**

106.    On September 11, 2017 Plaintiff, Jennifer Dunkley interviewed for the position of Social Services

Career Trainee at the Montgomery County FCRC Office via telephone with Rutan interviewers.

107.    Patricia Herker, Local Office Administrator was in the room while the interview was being held.

108.    The position of Social Services Career Trainee is an open competitive Rutan position.

109.    A Candidate Evaluation Form, reflecting the interview assessments of the candidate's qualifications

against each criterion for the position at issue, should be preserved for each candidate interviewed and made

a part of the Rutan file for the position. Each member of the interview panel shall sign and date the form and

certify that the evaluation was not based on political party affiliation or support (or lack thereof).

110.    The Employment Decision Form for the position shall be preserved and made a part of the Rutan file for

the position. The form shall include a written justification for the agency's decision as to the candidate

chosen to be hired for the position. The agency director or his/her designee shall sign and date the form and certify that the employment decision was not based on political party affiliation or support (or lack thereof).

111.    Each agency shall maintain Rutan files for each job position number in chronological order, so that hiring decisions can be audited.

112.    Rutan files shall be maintained for a period of three years from the date of the employment decision or in accordance with agency record retention policies, whichever is longer, at which time the files shall be transferred to the State Records Center for disposition in accordance with the State Records Act, 5 ILCS 160/1 et seq.

113.    The Rutan interviewers said their decisions would be based solely on the participant's scores they receive from answers to the interview questions. I answered my questions well, however the job was given to Christine Meyer (white), Office Associate at Montgomery County Office.

114.    I contacted Lisa Feraris to inquire about the scoring of the interview. I was told the scores are not released to participants.

115.    Plaintiff is still wait for information regarding her Rutan Interview scores to be released to her.

116.    The allegations of this paragraph will likely have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

**M. UNEXCUSED ABSENCE**

117.    Plaintiff, Jennifer Dunkley requested time off on September 14th, 2017. This time off was approved by Patricia Herker, LOA but it was later recorder by Christine Meyer, Payroll Timekeeper and Office

118.    On October 17 Plaintiff received an email for Patricia Herker, LOA with attachments of my Employee Monthly Time Report and Monthly Attendance Record and request for my signature on the Monthly Attendance Record.

119.    Plaintiff noticed that she was given an unexcused absence on September 14 on this record. Plaintiff emailed Patricia Herker, LOA to remind her that she had given in an IL 444-4140 for that day. She informed plaintiff that her request had been denied. Plaintiff had not been notified of this until this time.

120.   Patty Herker said that plaintiff had failed to find out if the 4140 was approved and did not come to work until the morning of the 14th.

121.   This is false because the time off was approved and signed by Patty Herker.

122.   Plaintiff emailed Patricia Herker, LOA to advise her that she recalled that the time was approved by her, and also that when plaintiff returned on the same day the payroll worker had changed her initial time request by a few minutes and gave plaintiff a copy of the signed formed.

123.   Plaintiff asked Patricia Herker to send her a copy of the IL444-4140 from their records. Patricia Herker, LOA sent a form signed by her and plaintiff which was marked denied.

124.   After receiving this form plaintiff signed the Monthly Attendance Record and emailed it back to Patricia Herker, LOA.

125.   Plaintiff later located the original IL444-4140 that was approved and signed by Patricia Herker, LOA.

126.   Note that the unexcused absence recorded on the Monthly Attendance Record is 3:20, as was corrected by the payroll worker in the approved IL444-4140.

127.   The reasons why there is more than one signed request from plaintiff for the same day is because usually when plaintiff turns in an IL444-4140 to Patricia Herker, LOA and later check to see if she has decided on it, she usually says she has not received it. So, plaintiff customarily have a signed form ready to give to her again. Plaintiff I also often give the payroll worker, a copy of the IL 444-4140 that she have placed in Patricia Herker's LOA mailbox.

128.   Plaintiff requested for Lisa Eden, union steward to file a grievance, she said she did not think the grievance would go very far. The grievance was filed on 11/27/2017 and it was denied on11/27/2017 for No contractual violation.

**N. FAILURE TO REPRESENT**

129.   Plaintiff contacted the AFSCME for support. Lisa Eden who was the Union Steward for my office came to discuss my concerns about the job. After the first meeting Lisa Eden gave me counseling in regards to my job situation, she told me that I should "play nice". After the second meeting when my LOA brought

disciplinary charges against me she counseled me that "maybe this job is not for you, you should start looking for another job".

130.   At our next meeting Lisa Eden she told me that the union had decided that they would not ensue with any grievances on my case. I inquired further as to what was her purpose of coming to the meetings and I was told by Lisa Eden that she was there to make sure that the LOA was following all the steps correctly within the disciplinary process. When Lisa Eden, Union Steward came to the Montgomery County office to attend my disciplinary meetings, after the meetings she would spend time fraternizing with Patricia Herker, LOA. Before becoming the LOA for Montgomery County office Patricia Herker was the union representative for our office.

131.   Even though I had initially contacted the union for representation I began to doubt the integrity of Lisa Eden and he willingness to represent me in a fair and non-prejudicial manner. Because of this I became reluctant to having Lisa Eden represent me at meetings with the LOA. I contacted Melanie Hoyle for help several times in hopes of finding a resolution. The suggestion was made that someone else from the union could represent me but that never came to fruition.

132.   For every occurrence I submitted a rebuttal to the LOA and to Lisa Eden. However no merit was given to my account of the situation. I stated several times to Lisa Eden that my LOA was using false information and false documentation but my request for some recourse was disregarded.

133.   An example of this disregard happened on the incident of the falsifying of records by Patricia Herker , LOA in giving me an unexcused absence. I had explained to Lisa Eden that the LOA had approved my request for time off but at the time I could not find that paperwork. Lisa Eden then communicated to me that she could file a grievance but it would most likely not be successful. She asked me if I still wanted her to file the grievance and I told her yes to go head and file it. In her email regarding the issue Lisa Eden chided me without investigating the situation regarding the timeliness of my time off request. I did not hear from her again about any information regarding the filing of the grievance. However, Lisa Eden filed the grievance # 628624 and had taken the time to request information from Patricia Herker, LOA concerning

her side of the story and based on the sole response from the LOA the grievance was submitted and denied the same day.

134.    Lisa Eden also chided me when one morning my LOA complained to her that I had missed forty two incoming phone calls. Even though Lisa Eden knew that I was the only employee assigned to answer phone calls from five incoming lines into the office. I was also the only employee serving our customers who walked into the office. Even though I had not called Lisa Eden about being treated unfairly, when she was made aware of the situation she sided with my white LOA. She did not suggest to Patricia Herker, LOA to have another employee help with the phones instead she told me that my email response to the LOA could have been written in a more agreeable way, also I should try harder and be better at multi-tasking.

135.    On August 7th I receive a seven-day suspension from Patricia Herker, LOA for which I had not been given prior notice. I had taken time of on Friday, August 4th, 2017. When I returned to work on Monday, August 7th I signed in and went to my desk. It was at this point that I got a message for Patricia Herker, LOA to come to her office. She had also called in Phyllis Atchinson, another employee, to be present in her office as a witness to the suspension being served. Patricia Herker, LOA told me that I was suspended for 7 days starting on Monday, August 7th, 2017.  She gave me the paperwork to sign and said I should turn my keys in and go home. Patricia Herker, LOA said she had not given me prior notice about the suspension was because I was off on Friday 4th. However, there is a contact phone number for me in my office file, which is accessible to Patrica Herker, LOA. I was not sent an email about this suspension, I was not given a telephone call; there were no messages on my answering machine from Administration or the Union about this suspension.

136.    I had arrived at work on Monday morning, August 7th, and then I had to gather my things and go home. Other staff was asking me why I was leaving; needless to say it was a very embarrassing situation. I feel Patricia Herker, LOA did this intentionally in order to shame me.

137.    When I returned to work on Monday, August 14th, 2017 I sent the suspension notice in an email to Lisa Eden. I also requested for her to file a grievance about this suspension on my behalf. She failed to

investigate or file a grievance on my behalf regarding this seven day suspension that began on August 7th, 2017.

138.    The Defendants conduct was arbitrary and discriminatory in that they did not give the plaintiff, Jennifer Dunkley a reason why they were not filing grievances.

**O. STATEMENT OF FACTS SUMMARY**

139.    Plaintiff, Jennifer Dunkley filed this action against Defendants AFSCME Local 2600 (Union) alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981.

140.    Plaintiff claims failure to represent a member as stated in the Council 31 AFSCME Contract Agreement, July 1, 2012 – June 30, 2015. Non-Discrimination, Article 111;   Grievance Procedure, Article V: Discipline, Article IX. Records and forms, Article XVII. Due to racial discrimination.

141.    Plaintiff was targeted for an Interim evaluation on May 10th, 2017. All staff, including plaintiff, at the office location had received an annual evaluation in December 2016. However, plaintiff believes that plaintiff was the only staff at the IDHS Montgomery County FCRC who was targeted and received an interim evaluation in 2017. Plaintiff was given another annual evaluation on September 15th, 2017. (Union) failed to file a grievance on plaintiff's behalf.

142.    On May 15th, 2017 plaintiff had a counseling meeting with LOA, Patricia Herker. She presented charges against plaintiff to which plaintiff submitted my rebuttal. Again, (Union) failed to file a grievance.

143.    On June 17, 2017 plaintiff had a Pre-disciplinary meeting with Patricia Herker, LOA to which plaintiff submitted a rebuttal on June 26, 2017.  On June 27, 2017 plaintiff receive a notice for a 5 day suspension from Patricia Herker, LOA.  On June 29, 2017 (Union) filed a grievance on my behalf, Grievance Number 628658, for management's failure to follow progressive and corrective discipline. In regards to this grievance that was filed on June 29, 2017, the processing was untimely.

144.    On July 11, 2017 plaintiff had a Pre-disciplinary meeting with Patricia Herker, LOA. Plaintiff submitted a rebuttal on July 13, 2017. (Union) failed to file a grievance. On August 7, 2017 plaintiff received a 7 day suspension from Patricia Herker, LOA for which plaintiff had not been given prior notice. Plaintiff had taken time of on Friday, August 4, 2017. When plaintiff returned to work on Monday, August 7, 2017

plaintiff signed in and went to her desk. It was at this point that plaintiff received an email message for

Patricia Herker, LOA to come to her office. She told plaintiff that plaintiff was suspended for 7 days starting

on Monday, August 7, 2017. Patricia Herker, LOA gave plaintiff the paperwork to sign and said plaintiff

should turn the building keys in and go home. Other staff were asking plaintiff why plaintiff was leaving,

needless to say it was a very embarrassing situation.

145.    Plaintiff believes that this was done intentionally by Patricia Herker, LOA to embarrass plaintiff.

(Union) had knowledge of this pending suspension but failed to notify plaintiff. When plaintiff returned to

work on Monday, August 14, 2017 plaintiff sent the suspension notice in an email to (Union). (Union) failed

to file a grievance on my plaintiff regarding this 7 day suspension which began on August 7, 2017. (Union)

also failed to file a grievance regarding this embarrassing situation that plaintiff experienced.

146.    On August 17, 2017 plaintiff had a Pre-disciplinary meeting with Patricia Herker, LOA. Plaintiff

submitted a rebuttal on August 23, 2017. (Union) failed to investigate the points in plaintiff rebuttal or to

file a grievance. On September 8, 2017 plaintiff had a Pre-disciplinary meeting with Patricia Herker, LOA.

Plaintiff submitted a rebuttal on September 15, 2017. (Union) failed to file a grievance.

147.    In October 2017, there was a dispute regarding an unexcused absence. (Union) promised to file a

grievance on plaintiff behalf. The grievance (Union) filed on plaintiff behalf was denied on the same day it

was filed, however, later when the (Union) realized that the plaintiff had filed a case with the EEOC (Union)

processed the grievance. Plaintiff also requested (Union) to file grievances for denial of training and

falsification of documents against Patricia Herker, LOA. (Union) failed to file a grievance.

**P.  FIDUCIARY**

148.    The Plaintiff, Jennifer Dunkley is a member of a protected group or protected class by the United States

federal anti-discrimination law.

149.    The Plaintiff is an employee of Illinois Department of Human Services.

150.    The Plaintiff is certified as Public Aid Eligibility Assistant of Illinois Department of Human Services.

151.    The Plaintiff is a member Local 2600 AFSCME.

152.    The Plaintiff alleges the existence of a fiduciary relationship between the plaintiff, Jennifer Dunkley and

the defendant, Local 2600 AFSCME wherein the plaintiff is the beneficiary and the defendant is the fiduciary. Council 31 AFSCME Contract Agreement, July 1, 2012 – June 30, 2015

153.    The Plaintiff, Jennifer Dunkley alleges a breach by the defendant, Local 2600 AFSCME of its fiduciary obligations relative to the plaintiff.

154.    The Defendant, Local 2600 AFSCME failed to represent the plaintiff under circumstances that give rise to a claim of unlawful racial discrimination.

155.    The Plaintiff, Jennifer Dunkley alleges a breach by the defendant, Illinois Department of Human Services of its fiduciary obligations relative to the plaintiff.

156.    The Defendant, Illinois Department of Human Services failed to implement the policies of Employee Handbook to protect plaintiff from unlawful discrimination.


## Q. CLAIM FOR RELIEF


### First Claim for Relief

#### Racial Discrimination
On Behalf of Plaintiff, Jennifer Dunkley

157.    Plaintiffs incorporate by reference each of the foregoing paragraphs.

158.    The Defendants have engaged in unlawful racial discrimination in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981 by failure to protect and represent.

159.    The unlawful employment practices described above were done intentionally with malice or with reckless indifference to the federally protected rights of the Plaintiff, Jennifer Dunkley.

160.    The Defendants have failed to implement their racial discrimination policies.

### Second Claim for Relief

#### Hostile Work Environment in Violation of Title VII and
Section 1981 On Behalf of Plaintiff, Jennifer Dunkley

161.    Plaintiffs incorporate by reference each of the foregoing paragraphs.

162.    The foregoing conduct violates Title VII of the Civil Rights Act of 1964 and Section 1981.

163.    Local 2600 AFSCME and Illinois Department of Human Services engaged in illegal, intentional

discrimination on the basis of race by perpetuating and condoning a hostile work environment based on race

against the Plaintiffs, Jennifer Dunkley.

164.    Plaintiffs, Jennifer Dunkley have repeatedly and explicitly complained to the Local 2600 AFSCME and

Illinois Department of Human Services about racial harassment.

165.    Despite the notice of the harassment and discrimination perpetrated against the plaintiff, Jennifer

Dunkley, Local 2600 AFSCME and Illinois Department of Human Services has failed to take adequate

remedial measures.

166.    As a consequence of Defendant's policies, practices, and/or procedures, the Plaintiffs have suffered

severe emotional distress.

167.    Defendant's actions proximately caused the Plaintiffs, Jennifer Dunkley injuries.


### Third Claim for Relief

Harassment in Violation of Title VII and Section 1981
On Behalf of Plaintiffs, Jennifer Dunkley

168.    Plaintiff, Jennifer Dunkley incorporate by reference each of the foregoing paragraphs.

169.    Plaintiff, Jennifer Dunkley engaged in protected activity by complaining about racial discrimination.

170.    Local 2600 AFSCME and Illinois Department of Human Services engaged in illegal disparate treatment

intensifying the racially hostile work environment against Plaintiff, threats and intimidation against Plaintiff,

issuing negative performance evaluations, forcing plaintiff, Jennifer Dunkley to seek a transfer to different

office.

171.    Denying promotional opportunities plaintiff, Jennifer Dunkley and issuing discipline to plaintiff,

Jennifer Dunkley.

172.    As a consequence of Local 2600 AFSCME and Illinois Department of Human Services conduct,

Plaintiffs suffered severe emotional distress and economic loss.

173.    Defendant's actions proximately caused Plaintiff's injuries.

**Fourth Claim for Relief**

Disparate Treatment in Violation of Title VII and Section 1981 On Behalf
of Plaintiff, Jennifer Dunkley

174. Plaintiff, Jennifer Dunkley incorporate by reference each of the foregoing

paragraphs.

175. Local 2600 AFSCME and Illinois Department of Human Services discriminated

against Plaintiff, Jennifer Dunkley by, *inter alia,* treating them differently and worse than

similarly-situated white employees in promotion, and discipline.

176. As a consequence of Local 2600 AFSCME and Illinois Department of Human

Services conduct, Plaintiffs suffered economic injury and emotional distress.

177. Defendant's actions proximately caused Plaintiffs' injuries.

**Fifth Claim for Relief**

Intentional Discrimination in Violation of Title VII and Section 1981
On Behalf of Plaintiff, Jennifer Dunkley

178.   Plaintiffs incorporate by reference each of the foregoing paragraphs.

179.   The foregoing conduct violates Title VII of the Civil Rights Act of 1964 and Section 1981.

180.   Local 2600 AFSCME and Illinois Department of Human Services engaged in illegal, intentional

discrimination on the basis of race by perpetuating and condoning a hostile work environment based on race

against the Plaintiffs, Jennifer Dunkley.

181.   Plaintiffs, Jennifer Dunkley have repeatedly and explicitly complained to the Local 2600 AFSCME and

Illinois Department of Human Services about racial harassment.

182.   Despite the notice of the harassment and discrimination perpetrated against the plaintiff, Jennifer

Dunkley, Local 2600 AFSCME and Illinois Department of Human Services has failed to take adequate

remedial measures.

183.   As a consequence of Defendant's policies, practices, and/or procedures, the Plaintiffs have suffered

severe emotional distress.

184.   Defendant's actions proximately caused the Plaintiffs, Jennifer Dunkley injuries.

## Sixth Claim for Relief

### Retaliation in Violation of Title VII and Section 1981
### On Behalf of Plaintiff, Jennifer Dunkley

185.    Since January, 2016, Defendants have engaged in unlawful retaliatory practices in violation of Section

704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by suspending the employment of plaintiff, Jennifer Dunkley

because she opposed discriminatory practices and participated in an EEOC proceeding.

186.    The effect of the events described above has been to deprive plaintiff, Jennifer Dunkley of

equal employment opportunities in retaliation for exercising her federally protected rights.

187.    The unlawful employment practices described above were intentional.

188.    The unlawful employment practices described above were done with malice or with reckless

indifference to the federally protected rights of plaintiff, Jennifer Dunkley.

## PRAYER FOR RELIEF

Wherefore, the plaintiff respectfully requests that this Court enter judgement in her favor:

a.  Grant a permanent injunction enjoining Defendants, its officers, successors, assigns and all persons

in active concert or participation with it, from engaging in any employment practice which fails to

represent members because of racial discrimination.

b.  Order Defendants to institute and carry out policies, practices, and programs which provide equal

representation for members who are in a protected class.

c.  Order Defendants to make whole the plaintiff, Jennifer Dunkley by providing appropriate

affirmative and equitable relief necessary to eradicate the effects of its unlawful practices.

d.  Order Defendants to make whole the plaintiff by providing compensation for past and future

pecuniary losses resulting from the unlawful practices described above, including but not limited to

medical expenses;

e.  Order Defendants to make whole Plaintiff by providing compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation

f.  Order Defendants to pay plaintiff punitive damages in amounts to be determined at trial.

g.  Order Defendants to provide training to its union stewards, managers and employees regarding discriminatory harassment and retaliation in the workplace;

h.  Grant such further relief as the Court deems necessary and proper in the public interest;

i.  Award the Plaintiff its costs in this action.

## DEMAND FOR JURY TRIAL

Under Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable in this action.

Respectfully submitted by Jennifer Dunkley, Plaintiff

Jennifer Dunkley

108 S Spruce Street

Greenville, IL 62246

Jennifer.dunkley@gmail.com

(618)616-8708

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2019, I electronically filed the foregoing Plaintiffs'

**Second Amended Complaint** with the Clerk of the Court using the CM/ECF system, and I

hereby further certify that on June 14 ,2019, I mailed by United States Postal Service and emailed

the same document to the following registered participants:


Melissa J. Auerbach, Lead Counsel
ARDC No. 3126792
Dowd, Bloch, Bennett, Cervone, Auerbach & Yokich
8 South Michigan Avenue, 19th Floor
Chicago, Illinois 60603
312-372-1361 (phone); 312-372-6599 (fax)
mauerbach@laboradvocates.com

Illinois Department of Human Services
Attn: K. Culbertson
100 S. Grand Avenue, 3RD FLOOR,
Springfield, IL 62762


Jennifer Dunkley

Jennifer Dunkley
108 S. Spruce
Street Greenville,
IL 62246
jennifer.dunkley@gmail.com


Dated: June 14, 2019

Jennifer Dunkley
108 S. Spruce Street
Greenville, IL 62246



U.S. POSTAGE PAID
FCM LG ENV
EAST ALTON, IL
62024
JUN 14, 19
AMOUNT

**$1.75**
R2305H124583-02

1099          62201

OFFICE OF THE CLERK
United States District Court - South
750 Missouri Avenue
East St Louis, 62201

MAIL CLEARED
US MAIL

RECEIVED

JUN 17

CLERK, U.S. DISTRICT
SOUTHERN DISTRICT
EAST ST LOUIS ILL.

